NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|   |   |
|---|---|
| MARK HARTMAN, et al.<br><br>Plaintiffs,<br><br>v.<br><br>THE TOWNSHIP OF READINGTON, et al.<br><br>Defendant. | Hon. Stanley R. Chesler, U.S.D.J.<br><br>Civ. No. 02-2017 (SRC)<br><br>**OPINION** |

**CHESLER, District Judge**

**THIS MATTER** comes before the Court on the Plaintiffs', Mark Hartman and Wilmark Building Contractors, Inc., Motion for Partial Summary Judgment (docket item #39). The Court having considered the papers submitted by the parties, and for good cause shown, **DENIES** the Plaintiffs' Motion (docket item #39) for the reasons set forth below.

**I. BACKGROUND**

On June 20, 1996, Wilmark Building Contractors, Inc. ("Wilmark") purchased 296 acres of land in Readington Township, New Jersey (the "Township"). Plaintiff Mark Hartman ("Hartman") is the sole shareholder of Wilmark. The purchased property was designated on the

1

Township's tax map as block 25, lots 38, 43, and 50 known as the "Dreahook Property".

Under the zoning regulations in effect at the time of the DreahookProperty's purchase, most of it, about 228 acres, was located in an area zoned as Rural Residential ("RR"), with a small portion of it, about 68 acres, zoned as Steep Slope Residential ("SSR"). RR zones allowed limited development of single family homes, farms, or open space. (See Dragan Aff. at Ex. B, § 403 (LAND DEVELOPMENT ORDINANCE OF THE TOWNSHIP OF READINGTON (effective through April 1998)). SSR zones allowed limited development of single family homes or farming/agricultural uses. (See id. at § 402.)

The local land use ordinances allowed for different development schemes, depending on the size and location of the property. The Dreahook Property was adjacent to a parcel of land that was deed restricted for open space, and in excess of 40 acres. (Hartman Aff., ¶ 4.) Accordingly, the proposed development of the Dreahook Property was required to conform with § 403.5.2 of the local zoning ordinance, which provided:

> Tracts of land 40 acres or more in size and located in the Hunderton County Agricultural Development Area (ADA) and tracts of land 30 acres or more in size and located adjacent to land which has been deed restricted for farmland or open space preservation . . . shall develop at one and one-half (1.5) acres. Open space Clusters and tracts of land 40 acres or greater in size that are not within the Hunderdon County ADA may elect to develop as one and one-half (1.5) acre Open Space Clusters with the following requirements:
> a.  Minimum Open Space Set-aside          50% of tract
> b.  Minimum Residential Lot Size          65,000 sq. ft.
> c.  Minimum Lot Circle                    200 feet
> d.  Maximum Floor Area Ratio Per Bldg Lot .12
> . . .
> l.  The open space parcel shall contain a minimum of 50% of the gross tract area which shall contain a minimum of 60% of the Unconstrained Tract Area. The Unconstrained Tract Area shall be defined as the area of the tract that does not contain flood plains, wetlands, 90% of the slopes between 15% and 25 and all slopes greater than 25%, easements (excluding site triangles), and

> right-of-way areas. The stormwater management system for the proposed subdivision may be located in the open space parcel; however, the land area of any detention or retention basin(s) shall not be counted towards the minimum area requirements in this section.

(Dragan Aff. at Ex. B § 403.5.2 (LAND DEVELOPMENT ORDINANCE OF THE TOWNSHIP OF READINGTON, HUNTERDON COUNTY NEW JERSEY, § 403.5.2 (effective through April 1998).) Because the 228 acre portion of the Dreahook Property located in the RR zone is not adjacent to property deed-restricted for farmland or open-space preservation, the Plaintiffs admit that this portion of the property could have been developed, under the governing zoning regulations, as three acre lots without an accompanying dedication of open space, but the developers opted for a 1.5 acre cluster. (Dragan Aff. at Ex A.)

Under § 403.6 of the Ordinance, the open space requirements were further defined as being "permanently deed restricted from further development except for recreation facilities as approved by the Township Committee and agricultural development on agricultural parcels." (Dragan Aff. at Ex. C, § 403.5.2 (LAND DEVELOPMENT ORDINANCE OF THE TOWNSHIP OF READINGTON, HUNTERDON COUNTY NEW JERSEY (effective through April 1998).) Under the ordinance, these open space parcels were required to be offered to the Township. (Id. at § 403.6.1(a).) If the Township did not accept the parcel, then the land may be offered to the Hunterton County Park System, another designated open space organization approved by the Township Committee, a homeowner's association, or held privately. (Id. at § 403.6.1(b).) On April 20, 1998, these provisions were revised by the Township to eliminate the allowance for private ownership of open space parcels created by voluntary cluster developments. (Dragan Aff. at Ex. C.) These revisions, contained in Township Ordinance #09-98, provided that the

Township should be offered the opportunity to accept the proposed open space for the Township but, if the Township declined to accept the space, it may be offered to the County Park System, approved open space organizations or recreation authorities, or retained by a homeowners' association. (Id. at § 7(b) (revising Land Development Ordinance §§ 403.6.1(a) & (b)).)

In July 1998, Wilmark presented a subdivision plan for the Dreahook Property to the Township's Planning Board. The Plaintiffs intended to develop a portion of the property, zoned as R.R., for 38 one and a half acre building lots on 75 acres, and leave approximately 104 acres of open space (the "Open Space Parcel"). Each building met the minimum lot size requirements, and the Plaintiffs sought to retain the proposed open space as a farm in private ownership. On August 11, 1998, the Township's Planning Board informed the Plaintiffs that they did not agree to the Plaintiffs' retention of the open space, but they believed it would be in the Township's best interest for the Township to "retain the open space as set forth in Section 403.6.2(a) of the Ordinance." (Hartman Aff., Ex. C) On January 11, 1999, the Township Planning Board adopted a resolution approving Phase I of the Plaintiffs' proposed subdivision, providing that the designated Open Space Parcel would be dedicated to the Township and devoted to passive recreation. On December 19, 1999, the Plaintiffs' application for Phase II of the Dreahook Property was conditionally approved, but required an amendment to the Developer's Agreement ensuring the dedication of the Open Space Parcel to the Township prior to the issuance of the 13th building permit in that section. On June 11, 2002, the Plaintiffs and the Township entered into a Developer's agreement requiring the developer to provide a deed to the Township, or the Township's assignee, the New Jersey Water Supply Authority, prior to the issuance of the 13th building permit for Phase II. The Township wished to convey the Open Space Parcel to the NJ

Water Supply Authority, who would maintain the property as public open space, but, if that transaction did not close, the Township indicated that it would retain the property. On April 26, 2002, the Plaintiffs' conveyed a deed for the Open Space Parcel to the Township. (Pl. Br. at 12.) The deed, however, was sent "under protest" and, when the Township attempted to convey the property to the NJ Water Supply Authority, the Water Supply Authority's title company deemed the title to be unacceptable and the title was returned to Plaintiff Hartman. (Def. Response to Statement of Undisputed Facts at 5, ¶ 25.)

The Plaintiffs are now challenging the mandatory dedication of this Open Space Parcel to the Township. The Plaintiffs claim that the Township failed to sustain its burden of proof that any such mandatory dedication, whether to the Township, homeowners' association, or approved open space organization, is constitutional under the takings clause of the Fifth Amendment to the U.S. Constitution. The Plaintiffs also assert that, if the required dedication is constitutional, the ordinance by which the Township accomplished the mandatory dedication lacked sufficient standards to guide the Planning Board's discretion as to whether or not to accept the Open Space dedication and was, itself, unlawful and contrary to the provisions of New Jersey state law.

## II. DISCUSSION

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Orson, Inc. v. Miramax Film Corp., 79 F.3d 1358, 1366 (3d Cir. 1996). In deciding whether there is a disputed issue of material fact, the Court must view the underlying facts and draw all reasonable inferences in

favor of the non-moving party.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).  The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).

Once the moving party has properly supported its showing of no triable issue of fact and of an entitlement to judgment as a matter of law, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts."  Matsushita, 475 U.S. at 586; see also Anderson, 477 U.S. at 247-48.  The non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324;  Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992) ("to raise a genuine issue of material fact . . . the [non-moving party] need not match, item for item, each piece of evidence proffered by the movant," but rather "must exceed the 'mere scintilla' threshold"), cert. denied, 507 U.S. 912 (1993).

The Plaintiffs are challenging the mandatory dedication of the Open Space parcel, alleging that it was wrongfully taken by the Township and that they are either entitled to just compensation for this land, or that the land should be returned to the Plaintiffs to use as a privately owned farm.

A.  **The Plaintiffs Have Failed to Meet Their Burden Under the Summary Judgment Standard to Demonstrate That the Actions of the Township Were in Violation of the**

6

**Fifth Amendment of the United States Constitution.**

To survive constitutional scrutiny under the Fifth Amendment, the mandatory dedication of the Open Space Parcel, as provided for in the Township's zoning ordinances in exchange for approving the Plaintiffs' subdivision plan, "must be related to the public harm that would justify denying the permit, and must be roughly proportional to what is needed to eliminate that harm." Lambert v. City and County of San Francisco, 529 U.S. 1045, 1550 (2000) (citing Nollan v. California Costal Comm'n, 483 U.S. 825 (1987) and Dolan v. City of Tigard, 512 U.S. 374 (1994)). The Plaintiffs argue that, in this case, there was no "'nexus' between the proposed subdivision and the exaction; [that the Township] has failed to show how a dedication actually advances a legitimate public purpose; and [the Township] has failed to demonstrate a 'rough proportionality' between the exaction of 107 acres as a condition of approval for a 38 home 75 acre subdivision." (Pl. Br. at 25.)

The initial step in any taking analysis is whether the challenged governmental action advances a legitimate public interest.[1] Unless it is being done in a discriminatory manner, municipalities may control residential growth to promote the public good pursuant to the police powers delegated to it by the State. See generally, Agins v. City of Tiburon, 447 U.S. 255, 262 (1980) (holding that open space zoning ordinances served the public by "assuring careful and orderly development of residential property with provision for open-space areas" ); Pace

---

[1] Governmental action such as this is entitled to a presumption that it does advance the public interest. See Goldblatt v. Hempstead, 369 U.S. 590, 596 (1962); Bibb v. Navajo Freight Lines, 359 U.S. 520, 529 (1959) (exercise of police power is presumed to be constitutionally valid); Salsburg v. Maryland, 346 U.S. 545, 553 (1954) (the presumption of reasonableness is with the State); United States v. Carolene Products Co., 304 U.S. 144, 154 (1938) (exercise of police power will be upheld if any state of facts either known or which could be reasonably assumed affords support for it).

Resources, Inc. v. Shrewsbury Township, 808 F.2d 1023, 1030 (3d Cir. 1987) (finding zoning ordinances which allegedly "prevent change, keep other citizens out of the Township, . . . minimize Township services and expenditures, . . . [and] keep taxes down" promoted the public good), cert. denied, 482 U.S. 906 (1987); Construction Indus. Ass'n of Sonoma County v. City of Petaluma, 522 F.2d 897, 908-09 (9th Cir.1975) (holding that a municipality's plan to fix the housing development growth rate "to preserve its small town character, its open spaces and low density of population" was a valid exercise of its police powers). The Third Circuit has specifically recognized that "[c]ontrolling the rate and character of community growth is the very objective of land use planning." Pace Resources, 808 F.2d at 1030. Moreover, New Jersey Municipal Land Use Law specifically identifies the goals of land use ordinances, which include:

> a. To encourage municipal action to guide the appropriate use or development of all lands in this State, in a manner which will promote the public health, safety, morals, and general welfare;
> . . .
> c. To provide adequate light, air and open space;
> . . .
> e. To promote the establishment of appropriate population densities and concentrations that will contribute to the well-being of persons, neighborhoods, communities and regions and preservation of the environment;
> . . .
> g. To provide sufficient space in appropriate locations for a variety of agricultural, residential, recreational, commercial and industrial uses and open space, both public and private, according to their respective environmental requirements in order to meet the needs of all New Jersey citizens;
> . . .
> i. To promote a desirable visual environment through creative development techniques and good civic design and arrangement;
> j. To promote the conservation of historic sites and districts, open space, energy resources and valuable natural resources in the State and to prevent urban sprawl and degradation of the environment through improper use of land;
> . . .
> k. To encourage planned unit developments which incorporate the best features of design and relate the type, design and layout of residential, commercial, industrial

and recreational development to the particular site;

N.J.S.A. 40-55D-2.

The State of New Jersey has adopted a development plan, a major goal of which "is to halt suburban sprawl, [which is] characterized as a 'pattern of development that destroys the character of the cultural landscape, is inefficient in terms of public facilities and services and devoid of the sense of place that has long defined the character of life in New Jersey.'" Mount Olive Complex v. Mount Olive Village Sewer Co., 774 A.2d 704, 774 (N.J.Super. 2001).  In adopting the open space provisions incorporated into their land use ordinances, the Defendants sought to preserve the rural character of the community and prevent suburban sprawl.  Where a municipality adopts comprehensive land use ordinances in relation to a state development plan, as here, the tenets of federalism are particularly strong, and a federal court should be reluctant to "'sit as a zoning board of appeals.'"  Pace Resources, 808 F.2d at 1036 (citation omitted).[2]

The ordinance at issue seeks to promote a legitimate goal of preserving open space and preserve the character of the Township.  The nexus between the advancement of this goal through requiring dedication of open space in exchange for allowing developments to proceed with higher-density housing seems readily apparent.  The proportionality of this ordinance also appears to be, at least facially, apparent as well.  The ordinance allowed parcels like the Dreahook Property, to develop into 3 acre parcels without a required dedication of open space, or

---

[2] The Court, in addressing the Plaintiffs' claims, is mindful that "[l]and use policy customarily has been considered a feature of local government and an area in which the tenets of federalism are particularly strong." Izzo v. Borough of River Edge, 843 F.2d 765, 769 (3d Cir. 1988).  "[I]t is not the Court's function to act as a 'super zoning board' substituting its judgment for that of a democratically elected body on debatable issues of land use policy." Smithfield Concerned Citizens for Fair Zoning v. Town of Smithfield, 719 F.Supp. 75, 81 (D.R.I. 1989).

9

to develop as a subdivision with double the housing density (1.5 acre parcels), in exchange for preserving at least 50% of the land as open space.  The Plaintiffs have failed to meet the high burden required to sustain a Motion for Summary Judgment which requires them to demonstrate, viewing the underlying facts and drawing all reasonable inferences in favor of the Township (as required by the standard for evaluating a motion for summary judgment), that: (1) the actions of the Township do not meet the constitutional threshold of being related to addressing the increased housing density and loss of open space that may otherwise justify denying the proposed development of the Dreahook Property; and (2) that the solution of requiring the dedication of a portion of the property to open space is not roughly proportional to what is needed to eliminate the potential harm brought by the introduction of a housing development to this property.  See Lambert, 529 U.S. at 1550 (citations omitted).  Accordingly, the Plaintiffs' Motion for Summary Judgment seeking a declaration that the Township violated the Fifth Amendment of the United States Constitution by compelling the Plaintiffs to convey the Open Space parcel as a condition of obtaining their subdivision approval is **DENIED**.

**B.     The Plaintiffs Failed to Demonstrate Any Cognizable Injury Resulting From the Alleged Statutory Infirmities With the Township's Land Use Ordinance**

Under the land use ordinances in effect at the time of the Plaintiffs' application for approval for their subdivision, the open space parcel at issue needed to be offered to the Township.  (Dragan Aff. at Ex. B, § 403.6.1 (LAND DEVELOPMENT ORDINANCE OF THE TOWNSHIP OF READINGTON, HUNTERDON COUNTY NEW JERSEY, effective through April 1998).  If the Township did not accept the parcel, the Township could then offer the land to Hunterdon

County Park System, another designated open space organization, or a homeowner's association. (Id. at § 403.6.1(b).)

The Plaintiffs contend that the township ordinance governing the dedication of the Open Space Parcel violates New Jersey's Municipal Land Use Law by requiring that such open space be offered to the Township. (Pl. Reply Br. at 16.) State law provides that township ordinances *may* allow for open space to be dedicated or made available to public use, but the ordinances "shall not require" such a dedication. N.J.S.A. 40:55D-43(a).[3] The Defendants have since conceded that the Township's ordinances violated the provisions of this governing state law by requiring the dedication of the Open Space Parcel to the Township and that the "situation has been remedied" with the subsequent revisions to the relevant ordinances. (Letter from Howard D. Cohen, attorney for the Defendants, to the Court (October 15, 2004).)

The Plaintiffs also claim that this ordinance gives the Township "unfettered discretion" with respect to the disposition of the open space and who it should be deeded to (either the Township, a homeowner's association, or an open space organization). (Pl. Br. at 26.) This lack of express standards in the statute to govern the exercise of the Township's discretion on who should receive the open space parcel should, the Plaintiffs' argue, invalidate the statute as "'impermissibly vague and indefinite.'" (Pl. Br. at 27 (quoting Damurgian v. Board of Adjustment, 690 A.2d 655, 661 (N.J.Super. 1997).)

---

[3] In October 1999, the Township Ordinances were updated to conform with N.J.S.A. 40:55D-43. Ordinance 24-99 eliminated the mandatory dedication requirement, allowing the land to be offered to the Township for acceptance or, in the alternative, to an "organization or trust to own and maintain the open space for the benefit of owners or residents of the development." ORDINANCE AMENDING AN ORDINANCE ENTITLED "THE LAND DEVELOPMENT ORDINANCE OF THE TOWNSHIP OF READINGTON, HUNTERDON COUNTY NEW JERSEY," Ordinance #24-99 (adopted October 4, 1999).

The subsequent revisions to the zoning ordinance made in October 1999 have eliminated the discretion left with the Township to determine who the open space will eventually be deeded to, and remedied the alleged conflict with state law by eliminating the requirement that the open space to be offered to the Township.  Even if these remedies were applied at the time of the Plaintiffs' subdivision approval, however, this would still not give the Plaintiffs the option to retain private ownership of the Open Space Parcel.  In July 1998, when the Plaintiffs first submitted their application for the subdivision approval of the Dreahook Property, the ordinance in effect at the time did not contain any provision to allow for private ownership of dedicated open space land.[4]  The ordinance, in effect since the April 20, 1998, allowed for the open space parcel to be owned by the Township, the County Park System, an approved open space organization or recreational authority, or by a homeowner's association - but not retained by a private party.  (Dragan Aff. at Ex. C at § 7(b) (Township Ordinance #09-98, revising THE LAND DEVELOPMENT ORDINANCE OF THE TOWNSHIP OF READINGTON, HUNTERDON COUNTY NEW JERSEY §§ 403.6.1(a) & (b)).)

Even by excising the portions of the statute which the Plaintiffs object to as violating state law and giving the Township an unlawful level of discretion, the Plaintiffs would still not be left with any ownership interest in the Open Space Parcel.  Eliminating the mandatory

---

[4] Under the "time of decision rule," courts may apply the land use statute in effect at the time of the decision being appealed.  Pizzo Martin Group v. Township of Randolph, 645 A.2d 89, 99 (N.J. 1994) (citing Lake Shore Estates v. Denville Township, 605 A.2d 1106 (1991), aff'd. o.b. 605 A.2d 1073 (N.J. 1992)).  Because the revisions to the ordinance which removed the option for private ownership of the open space land were removed from the ordinance prior to the Plaintiffs' application for subdivision approval, the Plaintiffs cannot claim that they relied on the older version of the ordinance and the possibility of private ownership of the open space parcel it contained.

granting of the Open Space Parcel to the Township and giving the developer the option to either grant the Open Space Parcel either be deeded to the Township or to some organization who would own and maintain that open space for the benefit of the residents of the development (as the newly revised ordinance does) both eliminates the discretion in the Township that the Plaintiffs claim invalidate the ordinance and bring the ordinance into compliance with governing state law.[5]  This would not, however, permit ownership of the open space parcel to remain with the Plaintiffs.  The Plaintiffs, therefore, have failed to demonstrate any cognizable injury from the alleged statutory infirmities of the ordinance in effect at the time of the approval of their subdivision plan since they would neither be entitled to possession of, nor compensation for, the open space property were these alleged infirmities corrected.  Accordingly, the Plaintiffs' Motion for Summary Judgment is **DENIED**.

### III. CONCLUSION

This Court, having considered the papers submitted by the parties, and for good cause shown, **DENIES** the Plaintiffs' Motion (docket item #39).  An appropriate form of order will be filed herewith.

Dated: August 14, 2006

    /s Stanley R. Chesler
Stanley R. Chesler, U.S.D.J.

---

[5] New Jersey state law requires that, if the open space from a residential cluster such as this is not dedicated to the municipality or other governmental agency, the developer shall "provide for an organization for the ownership and maintenance of any open space for the benefit of owners or residents of the development." N.J.S.A. 40:55D-43.