<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

MARK HARTMAN, et al.,

      Plaintiffs,

v.

THE TOWNSHIP OF READINGTON, et al.,

      Defendant.

---

Hon. Stanley R. Chesler, U.S.D.J.

Civil Action Nos. 02-2017 and 02-5597
Consolidated Cases

**OPINION**

<u>**CHESLER, District Judge**</u>

      This matter comes before this Court on the motion to dismiss the Complaints in these consolidated cases for failure to state a claim upon which relief can be granted, pursuant to FED. R. CIV. P. 12(b)(6), by Defendants the Township of Readington, the Governing Body of the Township of Readington, the Board of Health of the Township of Readington, Julie Allen, Beatrice Muir, Ronald Monaco, Gerard Shamey, and Frank Gatti (collectively, "Defendants"). For the reasons set forth below, Defendants' motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**.

**BACKGROUND**

      This case arises out of a set of disputes surrounding the purchase and development of four parcels of land in Readington Township, New Jersey (the "Township"). The following facts are

not in dispute.  Plaintiffs Lackland and Lackland ("Lackland") own a parcel of property within the Township, known as the Barley Sheaf property.  In the summer of 1995, Lackland entered into a contract to sell the Barley Sheaf parcel to Plaintiff Wilmark Building Contractors, Inc. ("Wilmark").  Plaintiff Mark Hartman ("Hartman") is the sole shareholder of Wilmark.  The purchase was conditioned on Wilmark receiving permits and approvals from Readington Township to develop the property.

On June 20, 1996, Wilmark purchased another parcel in Readington Township known as the Dreahook property.  Wilmark also owned a third parcel in the Township known as the Hillcrest Road property.  Wilmark attempted to purchase from Helen Vislocky a fourth parcel, known as the Vislocky property, but did not succeed.

Defendants are the Township of Readington, the Planning Board of the Township of Readington, the Board of Health of the Township of Readington, and municipal officials Julie Allen, Beatrice Muir, Ronald Monaco, Gerard Shamey, and Frank Gatti.

Wilmark alleges that it attempted to obtain the necessary permits and approvals to develop the Barley Sheaf, Dreahook, and Hillcrest Road properties but encountered difficulties in this process which were due to Defendants' active attempts to prevent development.  In brief, Wilmark alleges that: 1) the Board of Health and its officials intentionally worked to prevent Wilmark from obtaining the necessary septic approvals for the Barley Sheaf and Dreahook parcels; 2) the Planning Board and its officials intentionally worked to prevent development of the Barley Sheaf, Hillcrest Road, and Dreahook parcels by enacting new ordinances and ordinance amendments; 3) the Township interfered with development of the Dreahook parcel by refusing to schedule building inspections, and refusing to sign the final subdivision map for it

2

that Wilmark submitted; and 4) the Township and its officials interfered with Wilmark's purchase of the Vislocky parcel.  Lackland's Complaint concerns only the Barley Sheaf parcel and makes similar allegations that Wilmark experienced such difficulties, which injured Lackland by causing Wilmark not to proceed with the purchase.

In February of 1999, Lackland and Wilmark filed suit in the Superior Court of New Jersey,[1] initiating an action in lieu of prerogative writs against the Defendant government entities, challenging the actions of the Township and its boards in regard to the Barley Sheaf property. On November 16, 2005, after a trial, Judge Ashrafi issued the Final Judgment in the case. (Cohen Aff. Ex. F.)

On April 30, 2002, Wilmark and Hartman ("W+H") filed a Complaint in this Court against the Township of Readington and other Defendants, regarding all four parcels of land.  On March 6, 2003, W+H filed an Amended Complaint in that suit.  On November 21, 2002, Lackland filed a Complaint in this Court against the Township of Readington and other Defendants.  On May 4, 2004, this Court consolidated the two cases.

On June 23, 2006, Defendants filed the instant motion, seeking to dismiss the Lackland Complaint and the W+H Amended Complaint for failure to state a claim upon which relief can be granted.  Lackland and W+H subsequently filed motions to amend their respective Complaints, so as to remedy any defects this Court might find in deciding the motion to dismiss.

---

[1] <u>Lackland and Lackland et al. v. Readington Township et al.</u>, Dkt. No. SOM-L-344-03 (N.J. Super. Ct. Law Div.).

3

## ANALYSIS

**I.       Governing Legal Standards**

      A.        Standard for a Rule 12(b)(6) Motion to Dismiss

On a motion to dismiss for failure to state a claim, pursuant to FED. R. CIV. P. 12(b)(6), the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party.  See Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384-85 (3d Cir. 1994).  A complaint should be dismissed only if the alleged facts, taken as true, fail to state a claim.  See In re Warfarin Sodium, 214 F.3d 395, 397-98 (3d Cir. 2000).  The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail.  See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).  "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

While a court will accept well-pled allegations as true for the purposes of the motion, it will not accept unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations.  See Morse v. Lower Merion School District, 132 F.3d 902, 906 n.8 (3d Cir. 1997).  All reasonable inferences, however, must be drawn in the plaintiff's favor.  See Sturm v. Clark, 835 F.2d 1009, 1011 (3d Cir. 1987).  Moreover, the claimant must set forth sufficient information to outline the elements of his or her claims or to permit inferences to be drawn that the elements exist.  See FED. R. CIV. P. 8(a)(2); Conley, 355 U.S. at 45-46.  "The defendant bears the burden of showing that no claim has been presented."  Hedges v. United

States, 404 F.3d 744, 750 (3d Cir. 2005).

The Supreme Court has characterized dismissal with prejudice as a "harsh remedy." New York v. Hill, 528 U.S. 110, 118 (2000).  Dismissal of a count in a complaint with prejudice is appropriate if amendment would be inequitable or futile.  "When a plaintiff does not seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that he has leave to amend within a set period of time, unless amendment would be inequitable or futile." Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).

## II.      Defendants' 12(b)(6) Motion to Dismiss

### A.      Does the statute of limitations bar the § 1983 Barley Sheaf and Dreahook claims?

Defendants argue that Plaintiffs' § 1983 claims relating to the Barley Sheaf and Dreahook properties are barred by the statute of limitations.  The parties do not dispute that these claims are governed by New Jersey's two-year statute of limitations for personal injury actions, N.J. Stat. Ann. § 2A:14-2.  See Cito v. Bridgewater Township Police Dep't, 892 F.2d 23, 25 (3d Cir. 1989).

Plaintiffs argue that the discovery rule and the continuing violations doctrine work to rescue their claims from the two-year time bar.  These matters are decided under federal law, since federal law determines when a cause of action accrues under § 1983.  Lackland states, incorrectly, that the time of accrual is governed by New Jersey's discovery rule.  The Third Circuit has held to the contrary: "Typically in a federal question case, and in the absence of any contrary directive from Congress, courts employ the federal 'discovery rule' to determine when the federal claim accrues for limitations purposes. . . . Under the general formulation of the discovery rule, a claim will accrue when the plaintiff discovers, or with due diligence should

have discovered, the injury that forms the basis for the claim." Romero v. Allstate Corp., 404 F.3d 212, 222 (3d Cir. 2005). Lackland cites federal law, however, in support of application of the continuing violations doctrine. See O'Connor v. City of Newark, 440 F.3d 125, 128 (3d Cir. 2006) (using federal law in applying the continuing violations doctrine).

   *1. The Lackland Complaint*

   As to the Lackland Complaint, Lackland argues that the claims are not barred by the statute of limitations because Defendants' wrongs are continuing violations that began before two years prior to filing of the Complaint, but which continued into it. This, even if true, does not rescue their claims from the statute of limitations bar. Lackland correctly cites the Third Circuit's latest exploration of the continuing violations doctrine in O'Connor, but this case clearly undermines their argument. In O'Connor, the Third Circuit stated "the common-sense proposition that an applicable statute of limitations begins to run at the time the claim accrues, and that time-barred claims cannot be resurrected by being aggregated and labeled continuing violations." Id. at 129. This describes exactly what Lackland seeks to do here, and their time-barred claims cannot be resurrected by labeling them continuing violations.

   The Lackland Complaint alleges a set of events involving the Barley Sheaf property. The allegations begin in 1995, when Wilmark entered into a contract to acquire the property from Lackland. The Complaint alleges numerous difficulties experienced by Wilmark in the process of attempting to obtain the necessary approvals to develop the property.

   Lackland alleges significant problems in obtaining septic approval from the Board of Health through June of 1999, "at which time the Board of Health finally denied Wilmark's applications for septic approvals." (L. Compl. ¶ 98.) As to the Board of Health and the septic

approval process, the only event alleged by Lackland that falls in the two years prior to the filing

of the Complaint is the admission by Julie Allen that she used her position on the Board of

Health to "slow down" Wilmark's efforts.  (Id. at ¶ 94.)

Lackland also alleges difficulties due to the Township's enacting ordinances and

ordinance amendments, the last of which, Ordinance 43-98, is alleged to have been enacted on

December 24, 1998.  (Id. at ¶ 107.)  In February of 1999, Lackland and Wilmark filed a

complaint in lieu of prerogative writs (the "state court complaint") in the Superior Court of New

Jersey.[2]  The state court complaint alleged, inter alia, facts pertaining to the plaintiffs' attempts

to obtain development approvals from the Township of Readington for the Barley Sheaf

property.  The state court complaint alleged essentially the same facts as the Lackland Complaint

concerning the Board of Health's conduct in the septic approval process, and the Township's

enactment of ordinances and ordinance amendments.

The only allegations in Count I that refer to events occurring within the two-year period

prior to the filing of the Lackland Complaint are the allegations about the tape-recorded

conversations, and allegations of Township meetings which violate the Open Public Meeting Act

("OPMA"), N.J. Stat. Ann. § 10:4-11.

a.     The aggregation/continuing violation argument

Lackland argues that "the injury does not arise from a single discreet act but through the

cumulative effect a number of actions [sic] over a period of time."  (L.'s Opp. Br. 11.)  Lackland

relies on the aggregation principle applied to a Title VII hostile work environment claim in

---

[2] In deciding a motion to dismiss, this Court may consider matters of public record, such
as the complaint filed in the state court action.  Lum v. Bank of Am., 361 F.3d 217, 222 (3d Cir.
2004).

AMTRAK v. Morgan, 536 U.S. 101, 117 (2002), and extended to § 1983 claims in O'Connor.

This argument has many defects.  Chief among them is that this principle does not fit the facts

alleged in this case.  Lackland contends that the injurious effect of the Township's actions was

cumulative, and that no single event was actionable.  This is directly contradicted by the filing of

the state court complaint in February of 1999.  Even if this Court were to accept Lackland's

argument that the effects were cumulative – which it does not – the cumulative effects had

accumulated to the point of injury sufficient for suit in February of 1999.  As the Third Circuit

has explained, the aggregation theory:

> is designed explicitly to address situations in which the plaintiff's claim is based
> on the cumulative effect of a thousand cuts, rather than on any particular action
> taken by the defendant. In such cases, obviously the filing clock cannot begin
> running with the first act, because at that point the plaintiff has no claim; nor can a
> claim expire as to that first act, because the full course of conduct is the actionable
> infringement.

O'Connor, 440 F.3d at 128.

This explanation makes clear that an aggregation theory does not fit the facts as Lackland

alleges them: Lackland points easily to a number of particular acts which caused it injury, all of

which occurred prior to 2000.  Moreover, to continue with the Third Circuit's metaphor, even if

one were to accept the idea that Lackland suffered injury from a thousand cuts rather than from

any particular cut, the thousandth cut occurred prior to 2000.  In February of 1999, Lackland filed

the state court complaint alleging violation of its substantive due process rights under the federal

Constitution.  Having been cut enough to sue over constitutional violations in 1999, Lackland

cannot now maintain that its thousandth cut – starting the running of the statute – occurred later.

Lackland cannot succeed in escaping the operation of the statute of limitations with an

aggregation theory.

b.     The discovery rule argument

Lackland argues that the discovery rule operates to allow it to use the later-occurring tape-recorded conversations to escape the operation of the statute of limitations.  Lackland contends that it was not until it heard the conversations in 2001 that it discovered the injuries to its federal constitutional rights.  This is unpersuasive.  As stated above, "a claim will accrue when the plaintiff discovers, or with due diligence should have discovered, the injury that forms the basis for the claim."  Romero, 404 F.3d at 222.  The injuries that form the basis of Count I are caused by the specific – and easily enumerated – executive and legislative actions which frustrated Wilmark's attempts to develop the Barley Sheaf property.  As already discussed, the state court complaint makes undeniably clear that Lackland knew of those actions and those injuries when it filed the state court complaint in 1999.  That Lackland may have discovered new evidence about the perpetrators of the injuries in 2001 does not change the fact that it had certainly discovered the injuries themselves by February of 1999, when it began litigation over them.  The discovery rule cannot be used to make timely the claims for injuries due to the Board of Health septic approval process or the Township ordinances and ordinance amendments.  As to the claims for violation of federal constitutional rights pursuant to § 1983, Count I will be dismissed.

Nor can the allegations of violation of the OPMA in 2000 and 2001 help Lackland escape the operation of the statute of limitations.  The injuries Lackland alleges all occurred prior to the alleged violations of the OPMA.  Lackland alleges no specific injuries resulting from the occurrence of the non-public meetings.  To maintain standing to bring a claim, a plaintiff must

allege an injury-in-fact, one element of which is that there must be a "causal connection between the injury and the conduct complained of."  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (U.S. 1992).  There can be no causal connection between the injuries that occurred prior to February of 1999 and the failure to hold public meetings in 2000 and 2001.

2.     *The Wilmark/Hartman Amended Complaint*

The Wilmark/Hartman Amended Complaint alleges claims involving the Barley Sheaf, Dreahook, Vislocky, and Hillcrest Road properties.  Defendants contend that the statute of limitations bars the § 1983 claims involving the Barley Sheaf and Dreahook properties.  As to the Barley Sheaf property, W+H make the same arguments addressed above: this was a continuing violation, and the injury was not discovered until the 2001 investigation.  This Court rejects these arguments for the reasons stated above.  The Amended Complaint makes claims as to the Barley Sheaf property in Count II.  The claims in Count II for violation of federal constitutional rights pursuant to § 1983 will be dismissed as barred by the statute of limitations.

The Amended Complaint contains three claims that involve the Dreahook property, Counts I, III, and IV.  This Court's Opinion of August 14, 2006 describes the background to Count I at length.  (Opinion of August 14, 2006 at 1-5.)  As to Count I, Defendants argue that the statute of limitations began to run on January 11, 1999, when Wilmark received Preliminary Subdivision Approval and Final Major Subdivision Approval for Phase I of development of the Dreahook property.  That approval was conditioned on Wilmark's presenting an open space parcel to the Township.  W+H oppose this with three arguments: 1) they did not discover the wrong until the 2001 investigation allowed them to realize that there was conduct that shocked the conscience; 2) no cause of action could accrue until Plaintiffs actually conveyed the open

space parcel in 2002; and 3) Counts II and III allege continuing violations which rescue Count I from operation of the statute of limitations.

None of these arguments is persuasive.  As to the first, it is rejected for the reasons discussed above regarding the application of the discovery rule to the Barley Sheaf claim.  The injury occurred on January 11, 1999, when the Township granted the approval conditioned on presenting it with the open space property.  W+H does not allege that it was unaware of the Township's action at that time.  It thus should have discovered the injury at that time.  As discussed above, the fact that W+H may have discovered new evidence about the perpetrators of the injuries in 2001 does not change the fact that it had certainly discovered the injuries themselves in 1999.

The second argument fails because the law does not require the irreversible completion of an injurious process to occur before a plaintiff may bring suit.  Rather, as the Supreme Court explained in Lujan, an injury-in-fact sufficient to enable standing to bring suit occurs when there is "an invasion of a legally protected interest which is . . . actual or imminent, not conjectural. . ." Lujan, 504 U.S. at 560.  The conditional approval of January 11, 1999 appears to satisfy these requirements.

The third argument, based on continuing violations, is unpersuasive.  To start with, one cannot reasonably maintain that conduct involving refusal to inspect homes and sign a subdivision map are continuations of conduct involving a requirement that Plaintiffs present a land parcel.  W+H claim continuity between kinds of conduct that are too different to be termed continuous.

Plaintiffs have failed to counter Defendants' argument that, as to the Count I cause of

action relating to the imposition of the condition requiring conveyance of the open space parcel,

the statute of limitations began to run on January 11, 1999. The claims in Count I for violation

of federal constitutional rights pursuant to § 1983 will be dismissed as barred by the statute of

limitations.[3]

Defendants also move to dismiss Counts III and IV of the W+H Complaint as barred by

the statute of limitations, but make no specific argument about these claims. Count III alleges

that the Township repeatedly refused to schedule inspections for buildings on the Dreahook

property, but no dates are stated. Count IV alleges that Township officials refused to sign the

subdivision map for Phase III of the Dreahook property, but gives no dates either. This Court

finds nothing on the face of the Complaint which discloses when the § 1983 statute of limitations

began to run on these claims. As such, this Court cannot conclude that "it appears beyond doubt

that the plaintiff can prove no set of facts in support of his claim which would entitle him to

relief." Conley, 355 U.S. at 45-46. Defendants' motion to dismiss Counts III and IV of the W+H

Amended Complaint, as barred by the statute of limitations, will be denied.

### 3.    *Dismissal of the § 1983 claims with prejudice*

No amendment to either Complaint can revive the § 1983 claims that are time-barred

such that they could survive a future motion to dismiss. As amendment is futile, the § 1983

claims in Count I and Count II of the Wilmark/Hartman Amended Complaint will be dismissed

---

[3] Moreover, even if the statute of limitations had not run on this claim, W+H still would not have alleged an injury-in-fact sufficient to give them standing under Lujan. As discussed in this Court's summary judgment Opinion, W+H could not have retained private ownership of the open space parcel. (Opinion of August 14, 2006 at 12-13.) Because the injury W+H has alleged could not be redressed by a favorable decision, they lack standing to pursue this claim. Lujan, 504 U.S. at 560.

with prejudice.  All § 1983 claims in the Lackland Complaint will be dismissed with prejudice.

Because this Court has found that the § 1983 Barley Sheaf claims are time-barred, it need not reach Defendants' arguments that the § 1983 Barley Sheaf claims should be dismissed under the principles of res judicata and collateral estoppel.

B.    The direct Fifth Amendment claims

1.    *Is the Dreahook claim ripe?*

In addition to the indirect § 1983 claims, Count I of the Wilmark/Hartman Amended Complaint contains a direct claim (referred to as the "inverse condemnation claim" by the parties) under the Fifth Amendment of the federal Constitution.  In their moving brief, Defendants move to dismiss the § 1983 claims in Count I, pursuant to the statute of limitations, but do not mention the direct Fifth Amendment claim.  In their opposition brief, H+W proffer a statute of limitations argument, which Defendants respond to in their reply brief.  This matter was not included in the moving brief, and this Court does not find properly before it a motion to dismiss the inverse condemnation claim as barred by the statute of limitations.

Defendants did, however, move to dismiss the inverse condemnation claim for want of ripeness.  In brief, Defendants contend that this claim is not ripe because Wilmark has failed to exhaust its state remedies, pursuant to the finality rule of Williamson County Reg'l Planning Comm'n v. Hamilton Bank, 473 U.S. 172, 195 (1985) ("if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation.")  W+H, in opposition, contend that the Williamson finality rule does not apply to a facial challenge to the validity of an ordinance.  The Third Circuit clearly stated this principle in County Concrete

Corp. v. Twp. of Roxbury, 442 F.3d 159, 165 (3d Cir. 2006): "Appellants correctly argue that the finality rule only applies to as-applied Takings claims, and that they only challenge the Ordinance on its face."  In reply, Defendants weakly argue that this Court "dealt with" the facial challenge when it ruled on Wilmark's motion for partial summary judgment.  (Defs.' Reply Br. 11; Opinion of August 14, 2006.)  The contention that this Court adjudicated the facial challenge when it denied a motion for summary judgment is meritless. The Williamson finality rule does not apply to W+H's facial challenge under the Fifth Amendment, and Defendants have not provided any other basis for this Court to find the claim not ripe.  Defendants' motion to dismiss the inverse condemnation claim for lack of ripeness will be denied.[4]

> ### 2.      Is the Lackland temporary taking claim precluded?

The Lackland Complaint also contains a direct Fifth Amendment claim, Count II. Defendants contend that this claim is precluded by the state court action under various New Jersey preclusion principles.

Lackland concedes that it pled a claim of permanent regulatory taking, in violation of the federal Constitution, before the state court, and that the state court decided that issue.  Lackland contends, however, that it did not plead a temporary taking claim in state court, nor did that court decide such a claim: "In the present case, plaintiff claims that its property was temporarily taken . . . by the actions of the Board of Health in unjustifiably delaying and obstructing plaintiff's attempt to apply for development approvals commencing in 1997 and continuing until the state

---

[4] Although there is no ripeness problem, this Court is dubious about whether the direct Fifth Amendment claim has merit.  Inasmuch as W+H have alleged that the conveyance of the open space parcel was required as part of an exchange for subdivision approval, this Court questions whether a claim for deprivation without compensation can succeed.

trial court issued its injunction in December 2005." (L. Opp. Br. 25.)  Although Lackland here argues that the delaying conduct of the Board of Health continued into the twenty-first century, the Lackland Complaint alleges that the conduct occurred between 1996 and 1999.  (L. Compl. ¶¶ 25-98.)

"The Full Faith and Credit Act, 28 U.S.C. § 1738 . . . requires the federal court to give the same preclusive effect to a state-court judgment as another court of that State would give." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 293 (2005) (citation omitted). Thus, § 1738 requires the "federal court to look first to state preclusion law in determining the preclusive effects of a state court judgment." Marrese v. American Academy of Orthopaedic Surgeons, 470 U.S. 373, 381 (1985).

The parties look first to the state preclusion law of collateral estoppel which, in brief, "bars relitigation of any issue actually determined in a prior action." Selective Ins. Co. v. McAllister, 327 N.J. Super. 168, 173 (N.J. Super. Ct. App. Div. 2000).  The parties dispute whether the issues in Lackland's direct Fifth Amendment claim were actually determined in state court, but this Court need not undertake this inquiry to decide whether the state court action precludes this claim.  New Jersey courts also follow the "entire controversy" doctrine.  See N.J. COURT RULES, R. 4:30A (2006).  In brief, the entire controversy doctrine "requires parties to a controversy before a court to assert all claims known to them that stem from the same transactional facts." Joel v. Morrocco, 147 N.J. 546, 548 (N.J. 1997).  "[W]henever possible, the adjudication of a legal controversy should occur in one litigation in only one court." Id. (citation omitted).

In Ditrolio v. Antiles, 142 N.J. 253, 258 (N.J. 1995), the New Jersey Supreme Court

15

distilled the entire controversy analysis to this formulation: "The issue is, basically, whether a sufficient commonality of facts undergirds each set of claims to constitute essentially a single controversy that should be the subject of only one litigation."  In this case, the sets of facts that undergird the claims in state court and the claims at issue have sufficient commonality that they constitute a single controversy.

On November 16, 2005, Judge Ashrafi of New Jersey Superior Court issued that court's Findings of Fact and Conclusions of Law, which contains detailed findings of fact about Lackland's attempts to obtain septic approval from the Board of Health in 1996 through 1999. (Cohen Aff. Ex. E.)  This includes a recitation of the "chronological history of the events, meetings, and hearings of the Board during plaintiffs' 20-month effort to obtain septic approvals to demonstrate unreasonable delays and obstructionist tactics of the Board."  (Cohen Aff. Ex. E. ¶¶ 35-38; 165-182.)  Thus, contrary to Lackland's contention, the state court carefully examined detailed evidence of Lackland's attempts to obtain septic approval from the Board of Health. Moreover, Judge Ashrafi concluded that "the arbitrary, capricious, and unreasonable manner [of] the Board obstructed and delayed [Plaintiffs'] septic suitability applications."  (Id. at ¶ 205.)  The state court thus expressly addressed Lackland's claims of obstruction and delay by the Board of Health.

The set of facts detailed in the state court's Findings of Fact and Conclusions of Law and the set of factual allegations underlying Lackland's temporary taking claim show sufficient commonality to make it fair to apply the entire controversy doctrine to bar this claim.  The state court examined in detail Lackland's efforts to obtain septic approvals from the Board of Health during the same time period (1997 through 1999) described in Lackland's Complaint.

Significantly, Lackland does not argue to the contrary.  This Court finds that the claims about the Board of Health before the state court and the claims about the Board of Health in the instant action "constitute essentially a single controversy that should be the subject of only one litigation." Ditrolio, 142 N.J. at 258.  Lackland should have brought the temporary taking claim in the state court action, and it is precluded from bringing it here by New Jersey's entire controversy doctrine.  As to the direct Fifth Amendment claim, Count II of Lackland's Complaint will be dismissed.

No amendment to the Lackland Complaint could enable the temporary taking claim to survive a future motion to dismiss.  As amendment is futile, the direct Fifth Amendment claim in Count II of Lackland's Complaint will be dismissed with prejudice.

The § 1983 claims and the Count II direct Fifth Amendment claim are the only claims in the Lackland Complaint arising under federal law.  Because these claims will be dismissed with prejudice, and because they provided the sole basis for federal question subject matter jurisdiction for that case (Civil Action No. 02-5597), this Court has the discretion to decline supplemental jurisdiction over the remaining state law claims. See 28 U.S.C. § 1367(c)(3) ("district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction").  This Court declines to exercise supplemental jurisdiction over the remaining state law claims in the Lackland Complaint, and the remainder of the Lackland Complaint will be dismissed without prejudice for lack of subject matter jurisdiction.

C.    The Vislocky claim

Count V of the W+H Amended Complaint concerns the Vislocky property.  Defendants

17

contend that the claims for violation of procedural due process rights, substantive due process rights, and the right to equal protection must be dismissed on various grounds.  As to the first, W+H has conceded that its procedural due process claim is not viable.  (W+H Opp. Br. 35.)  As to the claim for violation of procedural due process rights, Count V of the W+H Amended Complaint will be dismissed with prejudice.

        1.     *The substantive due process claim*

As to the claim for violation of substantive due process rights, Defendants argue that W+H has alleged at most that Defendants acted with an improper motive, which cannot under any facts meet the "shocks the conscience" test.  In opposition, W+H contend that the "shocks the conscience" inquiry is a factual one and is thus ill-suited to dismissal for failure to state a claim.

As a threshold matter, W+H's characterization of the "shocks the conscience" inquiry as a matter of fact for the jury is incorrect.  "Whether an incident 'shocks the conscience' is a matter of law for the courts to decide."  Benn v. Universal Health Sys., 371 F.3d 165, 174 (3d Cir. 2004).

In Count V, W+H allege that: 1) they offered to buy the Vislocky parcel from Helen Vislocky; 2) Defendants interfered by telling Vislocky that, if she abandoned negotiations with Plaintiffs, certain variance decisions would be made in her favor; 3)  "[t]he sole purpose of the Defendants' activities was to impede the development efforts of Plaintiffs and to prevent them from acquiring property for development;" and 4) Vislocky entered into an agreement to sell the

property to the Township of Readington.[5]  (W+H Am. Compl. at 28.)

These allegations cannot meet the "shocks the conscience" test.  Plaintiffs have alleged a motive that does not come remotely close to shocking: the Township wanted to prevent development.   Nor have Plaintiffs alleged shocking conduct: the Township induced Vislocky to sell her property to them, rather than to the Plaintiffs.  Given that government has the power to compel the transfer of property by eminent domain, to claim that the Township did by inducement what it could have done by eminent domain cannot shock the conscience.

In County of Sacramento v. Lewis, 523 U.S. 833, 846-47 (1998), the Supreme Court explained that the "shocks the conscience" formula for executive infringement of rights to substantive due process is a "yard stick" used to find "abuse of power" and "egregious official conduct."  The Court emphasized that such conscience-shocking conduct differs greatly from ordinary fault in tort law, and that courts must take care that violations truly be of "constitutional proportions:" "executive action challenges raise a particular need to preserve the constitutional proportions of constitutional claims, lest the Constitution be demoted to what we have called a font of tort law."  Id. at 847.  The allegation that comes closest to an abuse of power in Count V is that officials made offers to make favorable decisions in return for Vislocky's terminating negotiations with Wilmark.  While such conduct may well be improper and offensive, this allegation falls far short of being of "constitutional proportions."

The Third Circuit has acknowledged that it has been difficult to formulate a clear standard for what conduct shocks the conscience: "The Supreme Court has not fully explicated

---

[5] The allegations made in Count V of the Amended Complaint are somewhat unclear and differ from the account stated in H+W's opposition brief.  (H+W Opp. Br. 36.)  The lack of clarity is not so great as to prevent adjudication of the motion to dismiss this claim.

the standard of culpability in substantive due process cases generally, and our own jurisprudence

is difficult to discern."  Sanford v. Stiles, 456 F.3d 298, 305 (3d Cir. 2006).  In understanding the

test in the context of zoning disputes, it is helpful to look to the Third Circuit's decision in

Eichenlaub v. Twp. of Indiana, 385 F.3d 274, 286 (3d Cir. 2004).  Eichenlaub involved the

application of the "shocks the conscience" test under roughly similar facts in a zoning dispute.

The Court discussed the standard in such a situation:

> [T]he misconduct alleged here does not rise sufficiently above that at issue in a
> normal zoning dispute to pass the "shocks the conscience test."  Basically, the
> Eichenlaubs assert that zoning officials applied subdivision requirements to their
> property that were not applied to other parcels; that they pursued unannounced
> and unnecessary inspection and enforcement actions; that they delayed certain
> permits and approvals; that they improperly increased tax assessments; and that
> they maligned and muzzled the Eichenlaubs.  With the exception of the previously
> discussed First Amendment retaliation claims, these complaints are examples of
> the kind of disagreement that is frequent in planning disputes.  As counsel for
> appellants acknowledged during argument, there is no allegation of corruption or
> self-dealing here.  The local officials are not accused of seeking to hamper
> development in order to interfere with otherwise constitutionally protected activity
> at the project site, or because of some bias against an ethnic group. There is no
> virtual "taking" as in Conroe. And as we have previously observed,
>
>> Every appeal by a disappointed developer from an adverse ruling
>> of the local planning board involves some claim of abuse of legal
>> authority, but "it is not enough simply to give these state law
>> claims constitutional labels such as 'due process' or 'equal
>> protection' in order to raise a substantial federal question under
>> section 1983."

Eichenlaub, 385 F.3d at 286 (quoting UA Theatre Circuit v. Twp. of Warrington, 316 F.3d 392,

402 (3d Cir. 2003)).

Viewed against this backdrop, it becomes clear that W+H's allegations in Count V are not

at the level of shocking the conscience.  As in Eichenlaub, there are no allegations of corruption or

self-dealing here, nor accusations of interference with constitutionally protected activity or of

ethnic bias.  The allegations here appear comparable to those made by the Eichenlaubs.  As such, Plaintiffs have failed to state a claim for violation of substantive due process rights; this component of Count V will be dismissed without prejudice.

This conclusion is supported by the absence of allegations of improper motive.  Rather, W+H allege that the individual Defendants acted with the motive of inhibiting development.  (W+H Am. Compl. Count I ¶ 32.)  This is a legitimate governmental concern, and it weighs against finding that the conduct shocks the conscience.  See Levin v. Upper Makefield Twp., 90 Fed. Appx. 653, 662 (3d Cir. 2004) (Township's opposition to development based on "obviously legitimate concerns" and does not shock the conscience); Koorn v. Lacey Twp., 78 Fed. Appx. 199, 203 (3d Cir. 2003) (examining whether executive action was "improperly motivated").

2.    *The equal protection claim*

Count V alleges that Defendants have violated Plaintiffs' rights to equal protection.  Defendants contend that this claim should be dismissed because H+W plead no facts that support an equal protection claim.  This is correct; Count V contains no factual allegations that Plaintiffs were treated differently from similarly situated people.  In their opposition brief, H+W allege the missing facts.  The facts alleged in the brief, however, are not stated in Count V of the Amended Complaint.  In County Concrete, the Third Circuit held that bare conclusory allegations, such as appear in the Amended Complaint itself, fail to state a claim, and affirmed dismissal of a complaint in which no facts were pled as to the similarly situated parties.  County Concrete, 442 F.3d at 171.  See also Taliaferro v. Darby Twp. Zoning Bd., 458 F.3d 181, 190 (3d Cir. 2006) (dismissing an equal protection challenge to a zoning board's actions because the plaintiff failed to "allege an injury in fact that is concrete, particularized, or actual").  Plaintiffs have failed to

state a claim for violation of equal protection rights, and this component of Count V will be dismissed without prejudice.

> D.      The Hillcrest Road claim

Count VI of the W+H Amended Complaint concerns the Hillcrest Road property.  As with the Vislocky property, Defendants contend that the claim for violation of procedural due process rights must be dismissed because procedural due process cannot be implicated where an adequate procedure for review is available and redress has not yet been denied.  W+H do not oppose this argument.  Moreover, the Third Circuit has determined that the availability in New Jersey of prerogative writ litigation is constitutionally sufficient to meet the requirements of procedural due process.  DeBlasio v. Zoning Bd. of Adjustment, 53 F.3d 592, 598 (3d Cir. 1995), cert. denied, 516 U.S. 937 (1995).  As to the claim for violation of procedural due process rights, Count VI of the W+H Amended Complaint will be dismissed with prejudice.

In their opposition, W+H argue that they have stated an equal protection claim with regard to the Hillcrest property.  Defendants, however, have not moved to dismiss a Hillcrest Road equal protection claim, and so no such motion is before the Court.

> E.      Legislative immunity

The parties both include discussions of absolute legislative immunity in their briefs, and they do not dispute that the individual defendants are protected by absolute legislative immunity from liability for their legislative acts.  As the parties discuss this issue only in general terms, without reference to specific claims, this Court cannot rule on the implications of this principle for the motion to dismiss.

F.    Claims against the individual defendants

Defendants move to dismiss the claims against the individual defendants on several grounds.  First, Defendants argue that the state court has determined that the public entity Defendants did not violate W+H's constitutional rights, and therefore no individual member of the public entities could have violated W+H's constitutional rights.  Again, this argument is made without reference to any specific claim.  It is simply too vague to serve as a basis for  dismissal of any claim.

Defendants contend as well that all the claims against individuals for violation of substantive due process rights should be dismissed because none of the allegations meet the high bar of the "shock the conscience" standard.  This is persuasive.  The allegations of substantive due process violations, taken as a whole, are that the individual Defendants used the powers of their offices to frustrate Plaintiffs' development plans.  As discussed above, all these allegations appear comparable to those made in Eichenlaub, which the Third Circuit found did not meet the "shock the conscience" standard.  Also, as discussed above, this conclusion is supported by the fact that H+W have not alleged improper motives.

This conclusion is supported as well by W+H's opposition brief.  In four pages of discussion on this point, there is only one sentence that alleges a specific action by a specific individual: "Defendant Allen . . . sought to delay Wilmark's applications and bring about cancellation of the Barley Sheaf contract and sell that land to others."  (H+W Opp. Br. 49.)  The Third Circuit made good use of Shakespeare when it quoted Hamlet in holding that government delay does not shock the conscience, stating: "We remind [plaintiff] that among the 'slings and arrows of outrageous fortune,' Hamlet included 'the insolence of office,' and 'the law's delay.'"

Levin, 90 Fed. Appx. at 665.  The conduct alleged does not shock the conscience.  The motion to dismiss the claims against individuals for violation of due process rights will be granted, and those claims will be dismissed without prejudice.

Next, Defendants argue that Plaintiffs have failed to plead an equal protection claim. Defendants refer to their previously-made arguments in regard to Count V, from which this Court infers that they contend that these claims against individuals should be dismissed because H+W plead no facts that support an equal protection claim.  Again, this is correct; the H+W Amended Complaint contains no factual allegations that specific individual Defendants treated Plaintiffs differently from similarly situated people.  Nor do H+W in their opposition brief point to any specific factual allegations about how the individual Defendants violated Plaintiffs' rights to equal protection.  Plaintiffs have failed to state a claim for violation of equal protection rights, and these claims against individuals will be dismissed without prejudice.

Lastly, Defendants reiterate their argument that there can be no claim for violation of procedural due process rights if state law provides an adequate procedure for review, citing DeBlasio, 53 F.3d at 598.  Again, H+W have made no opposition to this argument.  As discussed above, this argument is persuasive and all claims against individuals for violation of procedural due process rights will be dismissed with prejudice.

G.    Summary

The following claims will be dismissed with prejudice: as to Lackland and Lackland's Complaint, all § 1983 claims and the direct Fifth Amendment claim in Count II; as to Wilmark and Hartman's Amended Complaint, the § 1983 claims in Counts I and II, all claims against individual Defendants for violation of procedural due process rights, and the claims in Counts V

24

and VI for  violation of procedural due process rights.

The following claims will be dismissed without prejudice: as to Lackland and Lackland's

Complaint, the state law claims; as to Wilmark and Hartman's Amended Complaint, all remaining

claims against individual Defendants for violation of substantive due process rights and the right

to equal protection, the claim in Count V for violation of substantive due process rights, and the

claim in Count V for violation of the right to equal protection.

The motion to dismiss will be denied as to the following claims in Wilmark and

Hartman's Amended Complaint: the direct Fifth Amendment claim in Count I, and the remaining

claims in Counts III and IV.

Defendants' motion to dismiss does not address the claims against government entities for

violation of substantive due process rights and the right to equal protection in Counts III, IV and

VI of Wilmark and Hartman's Amended Complaint.

**III.    Plaintiffs' Motions to Amend**

Plaintiffs may file Amended Complaints only in regard to the claims that are hereby

dismissed without prejudice.

<u>**CONCLUSION**</u>

For the reasons stated above, this Court **GRANTS IN PART** and **DENIES IN PART**

Defendants' motion to dismiss both the Lackland Complaint and the Wilmark/Hartman Amended

Complaint, for failure to state a claim upon which relief can be granted, pursuant to FED. R. CIV.

P. 12(b)(6).  As to all § 1983 claims in the Lackland Complaint, the motion to dismiss is granted,

and those claims are dismissed with prejudice.  As to the direct Fifth Amendment claim in Count

II of the Lackland Complaint,  the motion to dismiss is granted, and that claim is dismissed with

prejudice.  As to the state law claims in the Lackland Complaint, the motion to dismiss is granted, and those claims are dismissed without prejudice.  As to the § 1983 claims in Counts I and II of the W+H Amended Complaint, the motion to dismiss is granted, and those claims are dismissed with prejudice.  As to the direct Fifth Amendment claim in Count I of the W+H Amended Complaint, the motion to dismiss for lack of ripeness is denied.  As to all remaining claims against the individual Defendants for violation of procedural due process rights in the W+H Amended Complaint, the motion to dismiss is granted, and those claims are dismissed with prejudice.  As to all remaining claims against the individual Defendants for violation of substantive due process rights and the right to equal protection in the W+H Amended Complaint, the motion to dismiss is granted, and those claims are dismissed without prejudice.  As to the remaining claims in Counts III and IV of the W+H Amended Complaint, the motion to dismiss is denied.  As to the claims for violation of procedural due process rights in Counts V and VI of the W+H Amended Complaint, the motion to dismiss is granted, and these claims are dismissed with prejudice.  As to the claim for violation of substantive due process rights in Count V of the W+H Amended Complaint, the motion to dismiss is granted, and this claim is dismissed without prejudice.  As to the claim for violation of the right to equal protection in Count V of the W+H Amended Complaint, the motion to dismiss is granted, and this claim is dismissed without prejudice.  As to the claims dismissed without prejudice, Plaintiffs are granted leave to amend the Complaint (as to Lackland) and the Amended Complaint (as to Wilmark and Hartman) within 45 days of the filing of this Opinion.

     s/ Stanley R. Chesler    
Stanley R. Chesler, U.S.D.J.

Dated:  November 30, 2006

26