**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| MARK HARTMAN and WILMARK BUILDING CONTRACTORS, INC., a New Jersey Corporation, | : : : : | |
| Plaintiffs, | : | Civil Action No. 02-2017 (SRC) |
| v. | : : : | **OPINION** |
| TOWNSHIP OF READINGTON, PLANNING BOARD OF THE TOWNSHIP OF READINGTON, BOARD OF HEALTH OF THE TOWNSHIP OF READINGTON, JULIE ALLEN, BEATRICE MUIR, and RONALD MONACO, | : : : : : : : : : | |
| Defendants. | : : | |

**CHESLER, U.S.D.J.**

This matter comes before the Court by the October 12, 2007 Motion to Dismiss Plaintiff's Third Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) by Defendants Township of Readington, Board of Health of the Township of Readington, and Julia Allen, Beatrice Muir, and Ronald Monaco in their official capacities ("Defendants") [docket item #127]. Opposition to the motion was filed by Plaintiffs Mark Hartman and Wilmark Building Contractors, Inc. (alternatively "Plaintiffs" and "W+H") [docket item #130]. The Court has considered the papers filed by the parties in support of and in opposition to the motion, and, pursuant to Federal Rule of Civil Procedure 78, rules on the motion based on the papers

submitted.  For the reasons that follow, the Court grants Defendants' motion.

## I.   BACKGROUND

The background of this case was explained in the Court's November 30, 2006 Opinion,

which is excepted below:

> This case arises out of a set of disputes surrounding the purchase and development of four parcels of land in Readington Township, New Jersey (the "Township").  The following facts are not in dispute.  Plaintiffs Lackland and Lackland ("Lackland") own a parcel of property within the Township, known as the Barley Sheaf property.  In the summer of 1995, Lackland entered into a contract to sell the Barley Sheaf parcel to Plaintiff Wilmark Building Contractors, Inc. ("Wilmark").  Plaintiff Mark Hartman ("Hartman") is the sole shareholder of Wilmark.  The purchase was conditioned on Wilmark receiving permits and approvals from Readington Township to develop the property.
>
> On June 20, 1996, Wilmark purchased another parcel in Readington Township known as the Dreahook property.  Wilmark also owned a third parcel in the Township known as the Hillcrest Road property.  Wilmark attempted to purchase from Helen Vislocky a fourth parcel, known as the Vislocky property, but did not succeed.
>
> Defendants are the Township of Readington, the Planning Board of the Township of Readington, the Board of Health of the Township of Readington, and municipal officials Julie Allen, Beatrice Muir, [and] Ronald Monaco[.][1]
>
> Wilmark alleges that it attempted to obtain the necessary permits and approvals to develop the Barley Sheaf, Dreahook, and Hillcrest Road properties but encountered difficulties in this process which were due to Defendants' active attempts to prevent development.  In brief, Wilmark alleges that: 1) the Board of Health and its officials intentionally worked to prevent Wilmark from obtaining the necessary septic approvals for the Barley Sheaf and Dreahook parcels; 2) the Planning Board and its officials intentionally worked to prevent development of the Barley Sheaf, Hillcrest Road, and Dreahook parcels by enacting new ordinances and ordinance amendments; 3) the Township interfered with development of the Dreahook parcel by refusing to schedule building inspections, and refusing to sign the final subdivision map for it that Wilmark submitted; and 4) the Township and its officials interfered with Wilmark's purchase of the

---

[1] Defendant Municipal officials Gerard Shamey and Frank Gatti were terminated as parties on April 11, 2007.

2

Vislocky parcel.  Lackland's Complaint concerns only the Barley Sheaf parcel and makes similar allegations that Wilmark experienced such difficulties, which injured Lackland by causing Wilmark not to proceed with the purchase.

In February of 1999, Lackland and Wilmark filed suit in the Superior Court of New Jersey, initiating an action in lieu of prerogative writs against the Defendant government entities, challenging the actions of the Township and its boards in regard to the Barley Sheaf property.  On November 16, 2005, after a trial, Judge Ashrafi issued the Final Judgment in the case.[2]

On April 30, 2002, Wilmark and Hartman ("W+H") filed a Complaint in this Court against the Township of Readington and other Defendants, regarding all four parcels of land.  On March 6, 2003, W+H filed an Amended Complaint in that suit.  On November 21, 2002, Lackland filed a Complaint in this Court against the Township of Readington and other Defendants.  On May 4, 2004, this Court consolidated the two cases.

On June 23, 2006, Defendants filed a motion to dismiss the Lackland Complaint and the W+H Amended Complaint for failure to state a claim upon which relief can be granted.  Lackland and W+H subsequently filed motions to amend their respective Complaints, so as to remedy any defects this Court might find in deciding the motion to dismiss.

(Nov. 30, 2006 Op. 1-3 (citations omitted & footnote altered).)

In an Order dated November 30, 2006, the Court dismissed with prejudice the Lackland Complaint, all § 1983 claims in the W+H Complaint, and the direct Fifth Amendment claim in Count II of the W+H Complaint, and dismissed without prejudice the state law claims in the W+H Complaint.  (Nov. 30, 2006 Order [docket item #118]; Nov. 30, 2006 Op. [docket item #117].)  As to the W+H Amended Complaint, the Court dismissed with prejudice the § 1983

---

[2] Lackland & Lackland et al. v. Readington Township et al., Docket No. SOM-L-344-03 (N.J. Super. Ct. Law Div.).  Judge Ashrafi's opinion was affirmed with modifications by the Appellate Division of the New Jersey Superior Court on February 26, 2008; the modifications were minor changes to the execution of the remedy ordered by Judge Ashrafi and have no impact on the case before this Court.  Lackland & Lackland, et al. v. Readington Township, et al., Docket Nos. A-2190-05T1 & A-2341-05T1, 2008 WL 495478 (N.J. Super. Ct. App. Div. Feb. 26, 2008).

claims in Counts I and II, all claims against individual Defendants for violation of procedural due process rights, and the claims in Counts V and VI for violation of procedural due process rights. The Court also dismissed without prejudice all other claims against individual Defendants for violation of substantive due process rights and the right to equal protection, the claim in Count V for violation of substantive due process rights, and the claim in Count V for violation of the right to equal protection. The Court denied the motion to dismiss as to the direct Fifth Amendment claim in Count I and the remaining claims in Counts III and IV of the W+H Amended Complaint. Finally, the Court granted Plaintiffs leave to amend the Complaints as to the claims dismissed without prejudice.

W+H filed a Second Amended Complaint on January 16, 2007 [docket item #119]. After Lackland failed to file an amended complaint, this Court entered Final Judgment against Lackland on April 11, 2007. (Apr. 11, 2007 Order [docket item #121].) With leave of Court, W+H then filed a Third Amended Complaint ("TAC") on July 24, 2007 [docket item #124]. Defendants then filed the instant Motion to Dismiss the Third Amended Complaint on October 12, 2007 [docket item #127].

## II.   LEGAL ANALYSIS

### A.   Standard of Review

A defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). In reviewing the motion, a court must draw all reasonable inferences in favor of the non-moving party. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), abrogated on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982). Even if it appears "that a recovery is very remote and unlikely[,]" the complaint may proceed. Scheuer,

416 U.S. at 236.  To survive a motion to dismiss, the complaint need not provide detailed factual allegations.  Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007).  However, "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Id. at 1965.  The Court is not obligated to give credence to bald assertions or legal conclusions presented as fact.  Id.; In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429 (3d Cir. 1997).

A motion to dismiss for failure to state a claim upon which relief can be granted may be granted with or without prejudice, the latter allowing amendment of the claim to remedy the prior deficiency.  Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000).  As explained by the Third Circuit,

> in the typical case in which a defendant asserts the defense of failure to state a claim by motion, the plaintiff may amend the complaint once "as a matter of course" without leave of court.  See 2 James Wm. Moore et al., Moore's Federal Practice § 12.34[5], at 12-76 (3d ed.1999) (quoting Fed. R. Civ. P. 15(a)).  After amending once or after an answer has been filed, the plaintiff may amend only with leave of court or the written consent of the opposing party, but "leave shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a).  The Supreme Court has instructed that although "the grant or denial of an opportunity to amend is within the discretion of the District Court, . . . outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely an abuse of that discretion and inconsistent with the spirit of the Federal Rules."  Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962).

> "Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility."  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir.1997) ("Burlington"); Lorenz v. CSX Corp., 1 F.3d 1406, 1413-14 (3d Cir.1993).  "Futility" means that the complaint, as amended, would fail to state a claim upon which relief could be granted.  Burlington, 114 F.3d at 1434.  In assessing "futility," the District Court applies the same standard of legal sufficiency as applies under Rule 12(b)(6).  Id.; 3 Moore's Federal Practice, supra § 15.15[3], at 15-47 to -48 (3d ed.2000).  Accordingly, if a claim is vulnerable to dismissal under Rule 12(b)(6), but the plaintiff moves to amend, leave to amend generally must be granted unless the amendment would not cure the deficiency.

Shane, 213 F.3d at 115.

    **B.**    **Discussion**

    **1.**    **Dreahook Property – Fifth Amendment Claim**

The Court will first address Defendants' contention that Plaintiffs W+H have failed to

state a Fifth Amendment Taking Claim in Count One of the TAC.  The Taking Claim within

Count One of TAC states that "[t]he conduct of the Township of Readington and the Planning

Board of the Township of Readington deprived Plaintiffs of the protection of the Fifth

Amendment of the Constitution of the United States insofar as they took Plaintiffs' property, the

Dreahook open space, without paying just compensation therefor."  (TAC 15 at ¶31.)

Although Defendants raise procedural objections to Plaintiffs' takings claim, the Court

will address the claim on its merits.  Defendants assert that Plaintiffs have failed to assert a viable

takings claim, because they failed to show an injury as they chose "to subdivide the Dreahook

property in a manner that requires them to dedicate the open space."  (Defs.' Br. in Supp. of Mot.

to Dismiss Third Am. Compl. ("Defs.' Br.") 12-13.)  Plaintiffs contend that the Township

Ordinance required them to subdivide the property in the manner that it was subdivided and

whether the subdivision was a choice or a mandate is a yet-determined issue of fact.  (Pls.' Br. in

Resp. to Defs.' Mot. to Dismiss the Third Am. Compl. ("Pls.' Br.") 14-15.)  Further, although

conceding that New Jersey's Municipal Land Use Law permits townships to require conveyance

of open space to a homeowners' association where there is a cluster development, Plaintiffs posit

that the New Jersey's Municipal Land Use Law is unconstitutional and then assert that, even if

constitutional, the state statute does not affect the required analysis of a mandatory open space

dedication.  (Id. at 15-16.)  Of note, Plaintiffs do not offer a legal argument regarding this

constitutionality theory.

Plaintiffs have the burden of demonstrating that they have standing.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).  This requires a three part showing:

> First, the plaintiff must have suffered an "injury in fact"-an invasion of a legally protected interest which is (a) concrete and particularized and (b) "actual or imminent, not 'conjectural' or 'hypothetical[.]' "  Second, there must be a causal connection between the injury and the conduct complained of-the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court."  Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

Id. at 560-61 (citations omitted).  The injury in fact that must be shown in this case is an unconstitutional taking.  A taking in violation of the Fifth Amendment occurs where property is taken for public use without there being a provision for just compensation to the owner of that property.  Chainey v. Street, 523 F.3d 200, 223 (3d Cir. 2008) (citing Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172, 195 & n.13 (1985)).

First, the Court has already determined that the Township Ordinance requiring dedication of open space is constitutional.  In its August 15, 2006 Opinion denying Plaintiffs' motion for partial summary judgment, this Court addressed, albeit using a different scope of review, whether the Township's ordinance requiring a dedication of open space violated the Fifth Amendment:

> To survive constitutional scrutiny under the Fifth Amendment, the mandatory dedication of the Open Space Parcel, as provided for in the Township's zoning ordinances in exchange for approving the Plaintiffs' subdivision plan, "must be related to the public harm that would justify denying the permit, and must be roughly proportional to what is needed to eliminate that harm."  Lambert v. City and County of San Francisco, 529 U.S. 1045, 1550 (2000) (citing Nollan v. California Costal Comm'n, 483 U.S. 825 (1987) and Dolan v. City of Tigard, 512 U.S. 374 (1994)).  The Plaintiffs argue that, in this case, there was no "'nexus' between the proposed subdivision and the exaction; [that the Township] has failed to show how a dedication actually advances a legitimate public purpose;

7

and [the Township] has failed to demonstrate a 'rough proportionality' between the exaction of 107 acres as a condition of approval for a 38 home 75 acre subdivision."  (Pl. Br. at 25.)

The initial step in any taking analysis is whether the challenged governmental action advances a legitimate public interest.[3]  Unless it is being done in a discriminatory manner, municipalities may control residential growth to promote the public good pursuant to the police powers delegated to it by the State. See generally, Agins v. City of Tiburon, 447 U.S. 255, 262 (1980) (holding that open space zoning ordinances served the public by "assuring careful and orderly development of residential property with provision for open-space areas"); Pace Resources, Inc. v. Shrewsbury Township, 808 F.2d 1023, 1030 (3d Cir. 1987) (finding zoning ordinances which allegedly "prevent change, keep other citizens out of the Township, . . . minimize Township services and expenditures, . . . [and] keep taxes down" promoted the public good), cert. denied, 482 U.S. 906 (1987); Construction Indus. Ass'n of Sonoma County v. City of Petaluma, 522 F.2d 897, 908-09 (9th Cir.1975) (holding that a municipality's plan to fix the housing development growth rate "to preserve its small town character, its open spaces and low density of population" was a valid exercise of its police powers).  The Third Circuit has specifically recognized that "[c]ontrolling the rate and character of community growth is the very objective of land use planning."  Pace Resources, 808 F.2d at 1030.  Moreover, New Jersey Municipal Land Use Law specifically identifies the goals of land use ordinances, which include:

> a. To encourage municipal action to guide the appropriate use or development of all lands in this State, in a manner which will promote the public health, safety, morals, and general welfare;
> . . .
> c. To provide adequate light, air and open space;
> . . .
> e. To promote the establishment of appropriate population densities and concentrations that will contribute to the well-being of persons, neighborhoods, communities and regions and preservation of the environment;
> . . .

---

[3] Governmental action such as this is entitled to a presumption that it does advance the public interest.  See Goldblatt v. Hempstead, 369 U.S. 590, 596 (1962); Bibb v. Navajo Freight Lines, 359 U.S. 520, 529 (1959) (exercise of police power is presumed to be constitutionally valid); Salsburg v. Maryland, 346 U.S. 545, 553 (1954) (the presumption of reasonableness is with the State); United States v. Carolene Products Co., 304 U.S. 144, 154 (1938) (exercise of police power will be upheld if any state of facts either known or which could be reasonably assumed affords support for it).

g. To provide sufficient space in appropriate locations for a variety of agricultural, residential, recreational, commercial and industrial uses and open space, both public and private, according to their respective environmental requirements in order to meet the needs of all New Jersey citizens;

. . .

i. To promote a desirable visual environment through creative development techniques and good civic design and arrangement;

j. To promote the conservation of historic sites and districts, open space, energy resources and valuable natural resources in the State and to prevent urban sprawl and degradation of the environment through improper use of land;

. . .

k. To encourage planned unit developments which incorporate the best features of design and relate the type, design and layout of residential, commercial, industrial and recreational development to the particular site;

N.J.S.A. 40-55D-2.

The State of New Jersey has adopted a development plan, a major goal of which "is to halt suburban sprawl, [which is] characterized as a 'pattern of development that destroys the character of the cultural landscape, is inefficient in terms of public facilities and services and devoid of the sense of place that has long defined the character of life in New Jersey.'" Mount Olive Complex v. Mount Olive Village Sewer Co., 774 A.2d 704, 774 (N.J.Super. 2001). In adopting the open space provisions incorporated into their land use ordinances, the Defendants sought to preserve the rural character of the community and prevent suburban sprawl. Where a municipality adopts comprehensive land use ordinances in relation to a state development plan, as here, the tenets of federalism are particularly strong, and a federal court should be reluctant to "'sit as a zoning board of appeals.'" Pace Resources, 808 F.2d at 1036 (citation omitted).[4]

The ordinance at issue seeks to promote a legitimate goal of preserving open space and preserv[ing] the character of the Township. The nexus between the advancement of this goal through requiring dedication of open space in

_____

[4] The Court, in addressing the Plaintiffs' claims, is mindful that "[l]and use policy customarily has been considered a feature of local government and an area in which the tenets of federalism are particularly strong." Izzo v. Borough of River Edge, 843 F.2d 765, 769 (3d Cir. 1988). "[I]t is not the Court's function to act as a 'super zoning board' substituting its judgment for that of a democratically elected body on debatable issues of land use policy." Smithfield Concerned Citizens for Fair Zoning v. Town of Smithfield, 719 F.Supp. 75, 81 (D.R.I. 1989).

> exchange for allowing developments to proceed with higher-density housing
> seems readily apparent.  The proportionality of this ordinance also appears to be,
> at least facially, apparent as well.  The ordinance allowed parcels like the
> Dreahook Property, to develop into 3 acre parcels without a required dedication of
> open space, or to develop as a subdivision with double the housing density (1.5
> acre parcels), in exchange for preserving at least 50% of the land as open space.

(Aug. 15, 2006 Op. on Pls.' Mot. for Partial Summ. J. 7-10 (quoting N.J.S.A. 40:55D-43(a))

("Aug. 15, 2006 Op.") [docket item #100].)  Therefore, Plaintiffs' suggestion that the Ordinance

is unconstitutional is not in concert with the law of this case.

Moving on to Plaintiffs' direct taking contention, they argue that "the Township

Ordinance gave them no choice" but to subdivide the property in a way that required a dedication

of open space.  However, as noted in this Court's August 15, 2006 Opinion, Plaintiffs admitted

that, "[b]ecause the 228 acre portion of the Dreahook Property located in the RR zone is not

adjacent to property deed-restricted for farmland or open-space preservation, . . . this portion of

the property could have been developed, under the governing zoning regulations, as three acre

lots without an accompanying dedication of open space, but the developers opted for a 1.5 acre

cluster."  (Aug. 15, 2006 Op. 3 (citing Aff. of Sharon A. Dragan, Esq. at Ex A [docket item

#47]).)  This demonstrates an acknowledgment by Plaintiffs that a choice existed as to how to

subdivide the property, and they chose to subdivide the property in a way that required an open

space dedication.

Furthermore, Plaintiffs assert that an issue of fact exists as to which ordinance applies and

the requirements of that ordinance, while Defendants assert that the applicable ordinances have

been identified.  However, the Court need not reach that issue.  It is unquestioned that Plaintiffs

challenge a mandatory dedication of open space and categorize that dedication as a taking.

However, New Jersey's Municipal Land Use Law allows township ordinances to require, as a condition of the approval of a planned development, that open space be set aside. N.J.S.A. 40:55D-39(c)(2); N.J.S.A. 40:55D-43. What cannot be required is an automatic dedication of that open space to the township; the open space may be owned and maintained by the residents of the development. N.J.S.A. 40:55D-43. This Court has already found the township ordinance requiring a dedication of open space to be constitutional. Therefore, under no circumstances did Plaintiffs have a right to keep the land in question. Where one does not have a right to the land, it is impossible for an unconstitutional taking to have occurred. Plaintiffs have therefore failed to show that they suffered an "injury in fact." See Lujan, 504 U.S. at 560.

As such, Plaintiffs fail to meet the standard for overcoming a motion to dismiss, as they do not present "[f]actual allegations [sufficient] to raise a right to relief above the speculative level." See Bell Atl. Corp., 127 S. Ct. at 1965. The Fifth Amendment claim within Count One of the Complaint is dismissed with prejudice.

**2.      § 1983 Claims relating to the Dreahook Property**

In their motion to dismiss, Defendants assert that "Plaintiff's claim in Count I of the TAC alleging that ' . . . Plaintiffs [sic] have violated the rights of Plaintiffs granted by the Fourteenth Amendment of the Constitution of the United States . . . . '" (Defs' Br. 4.) Claims against individuals, acting under color of law, for deprivation of the Constitutionally-protected rights to equal protection and substantive due process are brought under 42 U.S.C. § 1983. See, e.g., Eichenlaub v. Township of Indiana, 385 F.3d 274, 286 (3d Cir. 2004) (substantive due process and equal protection claims against zoning officials brought under § 1983). In its May 10, 2007 Order, which clarified its November 30, 2006 Order, this Court explained that it "found that

Count I of the Amended Complaint was time-barred, and dismissed the Count I § 1983 claims with prejudice." (May 10, 2007 Order 2 (citing Nov. 30, 2006 Op. 12-13).) All § 1983 Claims as to the Dreahook property in Count One of the TAC therefore remain dismissed with prejudice leaving no portion of Count One remaining before this Court.

**3.      Dreahook Property – Building Inspection Claim**

In their motion to dismiss, Defendants assert that "Count Three of Plaintiffs' Third Amended Complaint must be dismissed as the undisputed documentary evidence demonstrates there was no actionable delay in the issuance of building permits." (Defs.' Br. 13.) Plaintiffs do not address this argument in their brief in opposition to the motion (Pls.' Br 1-30), so the Court will treat this argument as being unopposed.

In Count Three of the TAC, Plaintiffs assert that the Township, in conspiracy with all other Defendants, "repeatedly refused to schedule building inspections without good cause, and, on several occasions, delayed inspections to unlawfully compel Plaintffs to deed open space to the Township prior to the time Plaintiffs were required to do so" (TAC 18 at ¶5), and that "[s]uch building inspections were a necessary step to the ultimate acquisition of a certificate of occupancy, which was necessary to permit the sale of each home constructed by Plaintiffs" (TAC 18 at ¶4). Although not identified in the TAC, Defendants state that Plaintiffs identified the affected properties as Block 25.02, Lot 1; Block 25.02, Lot 2; Block 25, Lot 50.04; and Block 25, Lot 43.04. (Defs.' Br. 13.) Defendants have provided the Court with the construction permits and certificates of occupancy for each of the properties. (Aff. of Howard D. Cohen, Oct. 12, 2007, Exs. E-H [docket item #127].) These documents demonstrate that the longest time period between the issuance of a construction permit and a certificates of occupancy was approximately

nine months.  (Cohen Aff., Ex. G (Construction Permit for Block 25, Lot 50.04 was issued July

23, 2001; Certificate of Occupancy was issued April 15, 2002).)  Furthermore, Defendants also

provided the Court with the Residential Warranty Certificates and the Certificates of Completion

for each of the properties, the latter of which is issued by the County, which show that, with one

exception of a delay of approximately three weeks, all Certificates of Occupancy were issued

within three days of the Township's receipt of these documents.  (Cohen Aff., Exs. E-H (three

week delay was on Block 25.02, Lot 2 as shown in Ex. F).)  Defendants also note that Plaintiffs

never filed an appeal with the New Jersey Construction Board of Appeals pursuant to N.J.A.C.

5:23-2.38 regarding the delays they allege in the Complaint.

        The information presented by Defendants demonstrates that there was no cognizable

delay in the issuance of building permits.  Plaintiffs therefore fail to present "[f]actual allegations

[sufficient] to raise a right to relief above the speculative level," see Bell Atl. Corp., 127 S. Ct. at

1965, to allow them to overcome a Rule 12(b)(6) motion to dismiss.  Count Three of the

Complaint is therefore dismissed with prejudice.

**4.      Vislocky Property Claims**

        Defendants argue that "Plaintiffs fail to state claims for violation of substantive due

process and equal protection pertaining to the Vislocky property and their claims must be

dismissed."  This Court previously dismissed these claims, with leave to appeal, for failing to

state a claim.  (Nov. 30, 2006 Op. 17-22.)  In Count Five of the TAC, Plaintiffs allege that 1)

they offered to buy the Vislocky property for $1.8 million; 2) Defendants interfered by writing a

letter to Helen Vislocky that "unlawfully and corruptly guaranteed that she could retain a portion

of her property while selling another portion of her property to the Defendant Township, the

purpose of which was to thwart the efforts of Plaintiffs to acquire the Vislocky property"; 3)

Defendant Allen told Helen Vislocky that Vislocky would "experience lengthy delays" if she

sold her property to Plaintiffs that would make such a sale "uneconomical and unwise"; and 4)

Helen Vislocky agreed to sell her land to the Township, and "[i]n connection with such sale, the

Township granted Helen H. Vislocky subdivision approval with numerous variances which, in

similar circumstances, would not be available to Plaintiffs."  (TAC 20-21 at ¶¶ 2-8.)  Plaintiffs

allege that "[t]he sole purpose of Defendants' activities was to impede the development efforts of

Plaintiffs and to prevent them from acquiring property for development."  (TAC 23 at ¶14.)

     **a.**     **Substantive Due Process Claim**

A "shocks the conscience" test is used to analyze substantive due process claims

involving the "actions or inactions" of a zoning official.  Eichenlaub, 385 F.3d at 285.  "That test,

of course, is not precise, and it also varies depending on the factual context[.]  What is clear is

that this test is designed to avoid converting federal courts into super zoning tribunals.  What

shocks the conscience is only the most egregious official conduct."  Id. (citations & quotations

omitted).  This Court explained the shocks the conscious test in its November 30, 2006 Opinion

on Defendants' first Motion to Dismiss.

> In County of Sacramento v. Lewis, 523 U.S. 833, 846-47 (1998), the Supreme
> Court explained that the "shocks the conscience" formula for executive
> infringement of rights to substantive due process is a "yard stick" used to find
> "abuse of power" and "egregious official conduct."  The Court emphasized that
> such conscience-shocking conduct differs greatly from ordinary fault in tort law,
> and that courts must take care that violations truly be of "constitutional
> proportions:" "executive action challenges raise a particular need to preserve the
> constitutional proportions of constitutional claims, lest the Constitution be
> demoted to what we have called a font of tort law."  Id. at 847. . . .
>
> The Third Circuit has acknowledged that it has been difficult to formulate

a clear standard for what conduct shocks the conscience: "The Supreme Court has not fully explicated the standard of culpability in substantive due process cases generally, and our own jurisprudence is difficult to discern." Sanford v. Stiles, 456 F.3d 298, 305 (3d Cir. 2006). In understanding the test in the context of zoning disputes, it is helpful to look to the Third Circuit's decision in [Eichenlaub, 385 F.3d at 286]. Eichenlaub involved the application of the "shocks the conscience" test under roughly similar facts in a zoning dispute. The Court discussed the standard in such a situation:

> [T]he misconduct alleged here does not rise sufficiently above that at issue in a normal zoning dispute to pass the "shocks the conscience test." Basically, the Eichenlaubs assert that zoning officials applied subdivision requirements to their property that were not applied to other parcels; that they pursued unannounced and unnecessary inspection and enforcement actions; that they delayed certain permits and approvals; that they improperly increased tax assessments; and that they maligned and muzzled the Eichenlaubs. With the exception of the previously discussed First Amendment retaliation claims, these complaints are examples of the kind of disagreement that is frequent in planning disputes. As counsel for appellants acknowledged during argument, there is no allegation of corruption or self-dealing here. The local officials are not accused of seeking to hamper development in order to interfere with otherwise constitutionally protected activity at the project site, or because of some bias against an ethnic group. There is no virtual "taking" as in [Conroe Creosoting Co. v. Montgomery County, Tex., 249 F.3d 337, 341-42 (5th Cir. 2001)]. And as we have previously observed,

>> Every appeal by a disappointed developer from an adverse ruling of the local planning board involves some claim of abuse of legal authority, but "it is not enough simply to give these state law claims constitutional labels such as 'due process' or 'equal protection' in order to raise a substantial federal question under section 1983."

Eichenlaub, 385 F.3d at 286 (quoting UA Theatre Circuit v. Township of Warrington, 316 F.3d 392, 402 (3d Cir. 2003)).

(Nov. 30, 2006 Op. at 19-20.)

15

Although more detailed, Plaintiffs TAC does not assert claims that differ greatly from those in their Amended Complaint that was previously dismissed by this Court.  As in the Amended Complaint, Plaintiffs allege that officials abused their power by making offers to make favorable decisions in return for Vislocky's terminating negotiations with Wilmark and generally treating Vislocky in a favorable manner.  In the TAC, Plaintiffs also allege that officials offered Vislocky a favorable arrangement where she could retain a portion of her property while selling another portion to the Township.  (TAC 20 at ¶4.)  Plaintiffs add that Defendant Allen told Helen Vislocky that Vislocky would "experience lengthy delays" if she sold her property to Plaintiffs that would make such a sale "uneconomical and unwise[.]"  (TAC 20 at ¶5.)   The added allegations do not move beyond the misconduct that the Third Circuit found not to shock the conscious in Eichenlaub, where Plaintiffs alleged that unnecessary inspections and enforcement actions took place and different subdivision requirements were applied to the property in question. See Eichenlaub, 385 F.3d at 286.

Additionally, beyond stating the conclusions that Defendants' actions were corrupt and unlawful, the factual allegations within Plaintiffs TAC fail to show "corruption or self-dealing[,]" that "[t]he local officials [sought] to hamper development in order to interfere with otherwise constitutionally protected activity at the project site," that Defendants' actions were motivated by "some bias against an ethnic group[,]" or that a virtual "taking" took place.  See id.  Furthermore, Plaintiffs assert that the purpose of promising approval to Helen Vislocky "was to thwart the development efforts of the Plaintiffs" and "[t]he sole purpose of the Defendants' activities was to impede the development efforts of Plaintiffs and prevent them from acquiring property for development."  (TAC 23 at ¶¶ 12, 14.)  However, the facts pled do not bolster these conclusions

16

to allow them to rise above conjecture.  Finally, zoning laws "are constitutional if they bear a 'substantial relation to the public health, safety, morals, or general welfare[,]'" <u>Rogin v. Bensalem Township</u>, 616 F.2d 680, 688 (3d Cir. 1980), and a limitation on development falls within this reasoning.  <u>See, e.g.</u> <u>Pace Res.</u>, 808 F.2d at 1034.

As such, although the allegations assert improper behavior by Defendants, the "misconduct alleged here does not rise sufficiently above that at issue in a normal zoning dispute to pass the 'shocks the conscience test[,]'" <u>Eichenlaub</u>, 385 F.3d at 286, nor are the factual allegations sufficient "to raise a right to relief above the speculative level[,]" <u>Bell Atl.</u>, 127 S. Ct. at 1965.  Plaintiffs' substantive due process claims in Count Five of the TAC are therefore dismissed with prejudice.

**b.      Equal Protection Claim**

Count Five of the TAC, in addition to the substantive due process contention addressed above, alleges that Defendants violated Plaintiffs' right to equal protection.  Although the equal protection claim is in a section of the TAC devoted to the Vislocky property, it appears to address Defendants' treatment of Plaintiffs on the whole.  Specifically, Plaintiffs allege that "Defendants engaged in conduct to . . . [t]ake certain of Plaintiff's property without just compensation while paying others, Helen Vislocky and Lazelle Knocke, Richard Schultz, in similar circumstances for their property[.]" (TAC 5-7 at ¶7, 7(k).)  Plaintiffs then specifically assert that "[t]he Defendants applied different standards to Mrs. Vislocky and others from whom they sought to acquire property than it applied to Plaintiffs, denying equal protection to Plaintiffs" and lay out a series of instances of alleged violation.  (TAC 21-23 at ¶9.)  Defendants assert that Plaintiffs have failed to state an equal protection claim.

17

In addressing an equal protection challenge in the zoning context, a court must ask if

Defendants

> ". . . irrationally distinguished between similarly situated classes." <u>Rogin v.
> Bensalem Twp.</u>, 616 F.2d 680, 689 (3d Cir. 1980).  Thus, the "first inquiry a court
> must make in an equal protection challenge to a zoning ordinance is to examine
> whether the complaining party is similarly situated to other uses that are either
> permitted as of right, or by special permit, in a certain zone."  <u>Congregation Kol
> Ami v. Abington Twp.</u>, 309 F.3d 120, 137 (3d Cir. 2002).  If "the entities are
> similarly situated, then the [Township] must justify its different treatment of the
> two," <u>id.</u>, by demonstrating that the ordinance is rationally related to a legitimate
> government purpose.  <u>Rogin</u>, 616 F.2d at 688.

<u>County Concrete Corp. v. Township of Roxbury</u>, 442 F.3d 159, 171 (3d Cir. 2006).  Furthermore,

specific facts must be pled regarding the two-part inquiry above; conclusory allegations are not

sufficient.  <u>Id.</u>

Addressing the first prong of the inquiry, whether the complaining party is similarly

situated to others, Plaintiffs' allegations are conclusory as to Knocke and Schultz and their

property.  Plaintiffs only assert that Knocke and Schultz were paid for their property "in similar

circumstances."  (TAC 6-7 at ¶7(k).)  No further information is given identifying Knocke and

Schultz.  (<u>See</u> TAC 1-25.)  Further, although the TAC is more specific as to the treatment received

by Vislocky, it fails to demonstrate how Vislocky was a similarly situated party.  Different

treatment is asserted in paragraph nine of Count Five of the TAC, but no effort is made to show

that Vislocky or her property were similar to Plaintiffs and their property.  For example, in

paragraph 9(a), Plaintiffs compare the treatment of the Vislocky property to that of the Hillcrest

property, but concede that the subdivisions sought were different.  (TAC 21 at ¶9(a) ("a.  The

Planning Board exercised its jurisdiction over the application for a major subdivision of the

Vislocky property, but refused to exercise its jurisdiction over the application of Plaintiffs for a

18

minor agricultural subdivision of its property known as the Hillcrest Property."); see also TAC 21-22 at ¶9(b); TAC 22 at 9(e).)  Plaintiffs also make general allegations of differential treatment but only offer conclusions stating that the treatment was unequal.  (TAC 22-23 at ¶9(c), (d), (f), (g), (h).)  As such, Plaintiffs fail to provide any factual detail about the underlying situations that would allow the Court to assess similarity.  (See id.)

Plaintiffs also fail to present facts in support of the second inquiry, whether the difference in treatment is rationally related to a legitimate governmental purpose.  As explained above, limiting development is a legitimate governmental concern.  See, e.g. Pace Res., Inc., 808 F.2d at 1034; see also Nov. 30, 2006 Op. at 21.  Even if this Court were to accept Plaintiffs' allegations as demonstrating that Plaintiffs were similarly situated with others that received different treatment, Plaintiffs failed to plead that the unequal treatment was not rationally related to the legitimate governmental purpose of limiting development.  As in County Concrete, absent factually explanatory pleadings, this Court has no means of determining whether there was a rational basis for the alleged discrimination.  See County Concrete, 442 F.3d at 171.

Finally, Plaintiffs cite Village of Willowbrook v. Olech, 528 U.S. 562 (2000), in support of the statement that the governmental interest of inhibiting development does not justify disparate treatment (Pls.' Br. 21), but that case does not assist Plaintiffs in overcoming the shortcomings of their pleadings.  In Village of Willowbrook, the Supreme Court held that 1) claims that the Village's demand of a 33-foot easement as a condition of connecting Olech's property to the municipal water supply as opposed to the 15-foot easement that was required of other similarly situated property owners was "'irrational and wholly arbitrary' and 2) the Village ultimately connected [Olech's] property after receiving a clearly adequate 15-foot easement" were

"sufficient to state a claim for relief under traditional equal protection analysis."  <u>Village of</u> <u>Willowbrook</u>, 528 U.S. at 565.  As such, the Supreme Court found that "the Equal Protection Clause gives rise to a cause of action on behalf of a 'class of one' where plaintiff did not allege membership in a class or group."  <u>Id.</u> at 564, 545.  Therefore, in this case, if Plaintiffs had sufficiently plead that they were similarly situated to others yet treated differently and that the application of disparate treatment was irrational and arbitrary, they would have stated a claim upon which relief could be granted.  However, as explained above, Plaintiffs' pleadings are factually deficient and therefore fail "to raise a right to relief above the speculative level."  <u>See</u> <u>Bell Atl.</u>, 127 S. Ct. at 1964.  Plaintiffs' equal protection claims in Count Five are therefore dismissed with prejudice.

**5.      Claims Against Individual Defendants**

As shown by the discussion above, Plaintiffs have failed to state a claim upon which relief can be granted as to the substantive elements of the TAC.  However, Plaintiffs assert that the TAC alleges "a conspiracy to violate constitutional property rights" and that such an allegation, on its face, "can defeat a Motion to Dismiss."  (Pls.' Br. 25.)  Plaintiffs assert that this allegation is made in paragraphs 7 and 8 of Count Three of the TAC.  (<u>Id.</u>)

In order to plead civil conspiracy in New Jersey, a plaintiff must allege: "(1) a combination of two or more persons; (2) a real agreement or confederation with a common design; (3) the existence of an unlawful purpose, or of a lawful purpose to be achieved by unlawful means; and (4) proof of special damages."  <u>Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.</u>, 331 F.3d 406, 414 (3d Cir. 2003).  To plead civil conspiracy under 42 U.S.C. § 1985(3), a plaintiff must allege:

20

> "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States."

Farber v. City of Paterson, 440 F.3d 131, 134 (3d Cir. 2006) (quoting United Bhd. of Carpenters & Joiners v. Scott, 463 U.S. 825, 828-29 (1983)).  All of the underlying issues in this case have been dismissed.  Therefore, as this Court has found there to be no deprivation of liberty, no damages are possible under either the state or federal statute.  All remaining claims against the individual defendants are therefore dismissed.

## III.   CONCLUSION

For the foregoing reasons, this Court grants Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), dismissing with prejudice Plaintiffs' Complaint in its entirety.  Dismissal is with prejudice, because Plaintiffs' pleadings, as highlighted by the discussion above and the fact that this is Plaintiffs' second substantive attempt at pleading their Complaint, demonstrate that further amendment of the Complaint would be futile.  See Shane, 213 F.3d at 115.  An appropriate form of order will be filed together with this Opinion.

  /s Stanley R. Chesler
STANLEY R. CHESLER
United States District Judge

DATED: June 20, 2008

21